UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEROME HOWARD,

    Plaintiff,

v.                                              Case No: 8:16-cv-3458-T-DNF

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## OPINION AND ORDER

Plaintiff, Jerome Howard, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint legal memorandum setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.    Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A.  Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The

impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

**B. Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that he is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, he will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit his physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that his impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If he meets this burden, he will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that his impairment meets or equals one of the impairments listed in Appendix 1, he must prove that his impairment prevents him from performing his past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of his past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform his past relevant work, then he will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, he will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200,

1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

**C. Procedural History**

Plaintiff protectively filed an application for SSI on March 14, 2013, alleging a disability onset date of June 1, 1993. (Tr. 187-92). Plaintiff's application was denied initially on May 22, 2013, and upon reconsideration on August 7, 2013. (Tr. 105-110, 115-19). Plaintiff requested a hearing and, on March 18, 2015, an administrative hearing was held before Administrative Law Judge R. Dirk Selland ("the ALJ"). (Tr. 40-69). On June 19, 2015, the ALJ entered a decision finding that Plaintiff was not under a disability since the application date. (Tr. 23-35). Plaintiff filed a request for review which the Appeals Council denied on October 28, 2016. (Tr. 1-6). Plaintiff initiated this action by filing a Complaint (Doc. 1) on December 21, 2016.

**D. Summary of the ALJ's Decision**

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 14, 2013, the application date. (Tr. 25). At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, diabetes mellitus, personality disorder, and polysubstance abuse. (Tr. 25). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 26).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

> perform medium work that does not require more than frequent climbing, crawling, crouching, kneeling, stooping and balancing; but is limited to work that is simple as defined in the Dictionary of Occupational Titles (DOT) as Specific Vocational Preparation (SVP) levels 1 and 2, routine and repetitive tasks in a work environment involving only simple-work related decisions; with few, if any, work place changes; and no more than frequent interaction with the general public.

(Tr. 27). At step four, the ALJ found that Plaintiff had no past relevant work. (Tr. 33).

At step five, relying on the testimony of a vocational expert, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 33). Specifically, the ALJ found that Plaintiff was capable of performing such jobs as hand packager, industrial cleaner, and order selector. (Tr. 34). The ALJ concluded that Plaintiff had not been under a disability since March 14, 2013, the date Plaintiff's application was filed. (Tr. 35).

**II.    Analysis**

Plaintiff raises a single issue on appeal: whether the ALJ erred by failing to properly evaluate Plaintiff's alleged symptoms regarding his inability to use several fingers on his right dominant hand. (Doc. 21 p. 6). Plaintiff argues that although the ALJ acknowledged Plaintiff's complaints regarding his hand, the ALJ failed to explain why he rejected Plaintiff's complaints. (Doc. 21 p. 8). Plaintiff requests that the case be remaned "for further analysis to include discussion as to whether claimant would be limited with respect to handling and fingering with his right dominant upper extremity, and if so, to what extent." (Doc. 21 p. 8).

In response, Defendant argues that the ALJ was not required to adopt Plaintiff's subjective complaints regarding his right hand, and that the ALJ's credibility finding was supported by substantial evidence. (Doc. 21 p. 9-12).

The record contains the following evidence related to Plaintiff's right hand. On June 23, 2010, Plaintiff sought emergency medical treatment for a "direct blow" to his right hand. (Tr. 806). Plaintiff told the doctor that he had a prior injury to his right hand resulting in paralyzed fourth and fifth fingers. (Tr. 806). Right hand x-rays were negative. (Tr. 807). Other than tenderness and swelling, his hand exam was negative and he was neurologically intact. (Tr. 806).

On December 10, 2010, Plaintiff sought emergency room treatment for a right upper extremity injury, which occurred when the police restrained and handcuffed him. (Tr. 795). Plaintiff reported he had preexisting weakness of the right hand due a gunshot wound and "multiple prior injuries." (Tr. 795). Plaintiff appeared to be in no acute distress and had alcohol on his breath. (Tr. 795). His right hand was tender over the ulnar aspect. (Tr. 795). There was atrophy and weakness in his fourth and fifth fingers. (Tr. 795-796). An x-ray revealed swelling and what appeared to be an old injury to his fifth metacarpal. (Tr. 796).

On April 7, 2012, Plaintiff sought emergency treatment after falling off his bicycle after drinking all day. (Tr. 369). Plaintiff hit his right hand on the handlebars when he fell. (Tr. 369). Examination findings include an unspecified "deformity" on Plaintiff's right hand, but ranges of motion were normal, as were neurological findings, except for mild bilateral tremors. (Tr. 371). X-rays of the right hand showed no evidence of acute fracture and well maintained cartilage spaces. (Tr. 372). In February 2013, x-rays of the right had revealed soft tissue swelling with no visible acute bony findings. (Tr. 877). There was "slight deformity of the fifth metacarpal related to an old healed fracture." (Tr. 877).

On August 7, 2013, state agency medical consultant Dr. Edmund Molis, M.D., reviewed the medical evidence of record and opined the Plaintiff could perform work at the medium level of exertion. (Tr. 88-89). Dr. Molis did not assess any manipulative limitations. (Tr. 89).

At the administrative hearing on March 18, 2015, Plaintiff testified that he has problems using his right hand. He stated that two of his fingers lock up and he cannot move them. (Tr. 47). Plaintiff explained that he was cut in 1985 which resulted in torn ligaments. (Tr. 47-48). He testified that he cannot use the ring finger and the pinky finger at all and the other three fingers locked up on him. (Tr. 48). Plaintiff testified that he cannot make a fist with his right hand and his handwriting looks like chicken scratch because his fingers keep locking up on him. (Tr. 48).

To establish disability based on testimony of pain and other symptoms, a plaintiff must satisfy two prongs of the following three-part test: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.3d 1221, 1223 (11th Cir. 1991)).

After an ALJ has considered a plaintiff's complaints of pain, the ALJ may reject them as not credible, and that determination will be reviewed to determine if it is based on substantial evidence. *Moreno v. Astrue*, 366 F. App'x 23, 28 (11th Cir. 2010) (citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). If an ALJ discredits the subjective testimony of a plaintiff, then he must "articulate explicit and adequate reasons for doing so. [citations omitted] Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson v. Barnhart*, 284 F.3d at 1225. "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court."

*Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995)). The factors an ALJ must consider in evaluating a plaintiff's subjective symptoms are: "(1) the claimant's daily activities; (2) the nature and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) effects of medications; (5) treatment or measures taken by the claimant for relief of symptoms; and other factors concerning functional limitations." *Moreno v. Astrue*, 366 F. App'x at 28 (citing 20 C.F.R. § 404.1529(c)(3)).

In this case, the Court finds that remand is inappropriate. The ALJ's decision shows that he reviewed the evidence and found that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, but his statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. (Tr. 28). The ALJ found the medical record "void of objective evidence to support a more restrictive [RFC]." (Tr. 32).

The medical record does not corroborate his allegations of paralyzed, locking, and unusable fingers. For example, while Plaintiff cites treatment records from June 23, 2010, when he sought emergency treatment for a "direct blow" to his right hand, those records reflect it was Plaintiff who reported he had a prior injury to his right hand resulting in paralyzed fourth and fifth fingers. (Tr. 806). Right hand x-rays were negative, other than tenderness and swelling, his hand exam was negative, and he was neurologically intact. (Tr. 806-807).

Likewise, treatment records from December 10, 2010, show that Plaintiff reported he had preexisting weakness of the right hand; however, he appeared to be in no acute distress and had alcohol on his breath. (Tr. 795). His right hand was tender in parts and swollen, but his hand had just been injured. (Tr. 795). Examination findings included atrophy and weakness in his ring and little fingers and an x-ray revealed what appeared to be an old injury to his little finger. (Tr. 795-796). The treatment notes, however, do not indicate paralysis or locking fingers.

Further, when Plaintiff sought treatment for an alcohol-related bike accident on April 7, 2012, an unspecified deformity was observed in his right hand; however, ranges of motion and neurological findings (except for bilateral tremors) were normal, and x-rays showed no evidence of acute fracture and well maintained cartilage spaces. (Tr. 372). Again, in February 2013, x-rays of the right hand revealed soft tissue swelling with no visible acute bony findings and only a "slight deformity" of the little finding related to an old healed fracture. (Tr. 877).

While the medical record contains medical evidence showing Plaintiff sought treatment for his right hand, there is no evidence supporting the functional limitation he alleges. In his decision, the ALJ explained that his credibility finding was based on other factors. The ALJ cited that Plaintiff was in jail at the time of hearing and had worked only sporadically in the past. (Tr. 32). The ALJ reasoned that Plaintiff's work history "raises questions as to whether his continuing unemployment is, indeed, the result of limitations from his medical impairments." (Tr. 32). Plaintiff's periods of employment during the fifteen years prior to his application total less than a year, and he never worked more than eight hours in a week. (Tr. 224). Earnings records reflect that, in the years since he turned eighteen, Plaintiff had no reported earnings during approximately twenty years, and only once had earnings exceeding $551.00 (Tr. 216-217).

Plaintiff failed to demonstrate that he was more limited than found by the ALJ and that the ALJ's decision was not supported by substantial evidence. Accordingly, the Court will not disturb the ALJ's findings on appeal.

### III. Conclusion

The decision of the Commissioner is **AFFIRMED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on March 9, 2018.

*Douglas N. Frazier* (signature)
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties